Case 21-3801, Tarrify Properties LLC v. Cuyahoga County OH. Argument not to exceed 15 minutes per side. Mr. DeRay, you may proceed for the appellant when ready. Good morning, Your Honor. I'm Matt DeRay for Plaintiff Appellate, Tarrify Properties. I'd like to reserve five minutes for rebuttal. May it please the Court. The core issue in this case is whether the factual assertions that the county made to take property should apply with equal force when the county is required to remedy that taking. If so, then this case is particularly well suited for class certification. But even if not, there are no insurmountable hurdles to class certification in this case. The idea that the county can't change the rules of the game halfway through is based on the well-established principles of collateral and judicial estoppel, both of which apply here. With respect to collateral estoppel, the only argument that's really in dispute in this case is whether the factual issue of the fair market values of plaintiffs' and putative class members' properties was actually and necessarily litigated before the county's Board of Revision, or BOR. It was. Could Tarrify have challenged the tax valuation back in 2018? Your Honor, he could have challenged it, but frankly, the fact that Tarrify did not choose to do so is really not relevant to the issue of whether or not the county took the position and whether or not the Board made a particular finding as to what the value was during those proceedings. Well, takings are about actual value, and these things are presumptive value, and that's why they have a whole mechanism for challenging them. If they're too high, they're too low. I'm on the same page, right? Under Ohio law, it's a presumptive value, right? Well, Your Honor, it's actually not. Under the Ohio Constitution, in fact, it says that properties are to be taxed at their true value, which is their fair market value. But if you're looking at fair market value, the assessors can only look at some of those exterior things. They don't necessarily take into account interiors, improvements, and so if that's the case, it can't be an actual value determination, can it? It would have to be, as Judge Sutton said, a presumptive value. Well, Your Honor, so whether or not... So first of all, there's evidence in the record that the mass appraisals and the valuations that the county auditor is coming up with are just as accurate as an individual property appraisal. But here, for the purposes of... I'm sorry to stop you there, but I don't understand how you can say that so categorically. Those are done every six years. Why would... It's obvious that they're not going to be accurate on year six or year five. You just can't say they're the same, they're all fair market value. One is to figure out a system of taxation, which you're trying to implement in a way that won't bollocks everything up, but still gives someone a chance to challenge it. The other is what's fair market value at the date of the transfer? I understand your point, Your Honor, but Ohio law and, again, the Ohio Constitution requires that the auditor update the values whenever the fair market value changes. Is that realistic? Meaning if you're going to have a valuation by the auditor every six years, value changes every day, every week. You can't expect a daily, weekly, monthly, annual evaluation, can you, or valuation? I understand Your Honor's point, but the fact remains is that the law is on the books. The Ohio Constitution says that the properties need to be taxed at their true value, and so... That's for the taxation purpose, and once again, we're talking about the difference between evaluation for tax purposes and evaluation for determining actual value. So that's where the problem is, and if you're going to use that metric, then that's going to be a problem for one of the elements for class certification, because you're not going to have... I mean, you're going to have these requirements for individual valuations. So, Your Honor, I actually disagree with the notion that we're talking about evaluation for tax purposes in and of itself. What plaintiffs' collateral and judicial estoppel arguments are is that the Board of Revision's determination on the issue of valuation, when it needed to decide the validity of the tax liens themselves, that that holding is controlling, because that involved the same factual issue. So whether or not the county relied on the auditor's valuation to prove that element of their foreclosure claim before the Board of Revision, they could have relied on any type of evidence, whether it had been an individual appraisal that was updated at the time that that argument was made. How would the county go about doing this? I mean, let's say realistically or practically. I mean, if you're going to have a so-called current fair market value, doesn't that require appraisers to view a lot of data, but also they have to go in the properties, right? I mean, so if you have a vacant building like this one was for a while, don't they have to go in and make a determination as to how the overall value is impacted by the interior of the building? I just don't see how that works, practically speaking. You'd have to have an army of appraisers who are constantly out valuing property, wouldn't you? I understand the concern. So that's precisely why the development and mass appraisal have been so significant since the 1980s, as plaintiffs actually would imagine. I know there have been lots of improvements and things are getting better on that front, but still, the valuations from the auditor are for tax purposes. I understand, but again, the point is that before the Board of Revision, the county wanted to foreclose a tax lien. And the county said, we want a declaration that our liens are good and valid liens. The Board of Revision was tasked with determining, are these liens good and valid? To determine whether or not they were good and valid, the question was, are these properties being taxed at their true value? Section 70 of the statute at issue required the Board of Revision to determine, by a preponderance of the evidence, whether or not the liens were good and valid. And so, at that time, whether or not the court believes that there was a different method to prove value, or whether or not the auditor's valuations were, depending on how accurate they are, the fact remains that to prove that issue, the county relied on the auditor's valuation. And the Board of Revision accepted that evidence as proof that the impositions asserted were commensurate with the property's true values as required by the Ohio Constitution. Maybe I'm missing something, but you keep saying things that I feel like you're not understanding where I'm coming from on this. The Ohio Constitution requires you only to tax based on accurate true value, right? And you keep coming back to this, and this is just what they did. But you can think all of that and still say it's a presumption, and the presumption becomes the true value if no one challenges it. That's all that means. It's designed to make it efficient. That does not prove what happens when you take the property, and at that point, you have a takings claim as to what fair market value is at that point. That's the disconnect for me with what you're saying. And to keep saying the Ohio Constitution says you can only tax it based on true value is just another way of saying the presumption lived because no one challenged it, right? That's all that means. It doesn't mean anything more, and I don't understand how it controls the separate fair market takings inquiry at a different date and time. And presumably, this is why most courts don't even allow you to put in the tax valuation for fair market value inquiries in, say, takings cases, which, by the way, is also in the Constitution. I understand. I understand Your Honor's point on that. But what's the answer to it then? Answer to? How are you answering it other than by saying the Ohio Constitution says you can only tax true value? Because, Your Honor, I don't believe that there's a presumption here. The Ohio Constitution doesn't say there's a presumption as to value and if it goes unchallenged. What happened here was the Board of Revision was required to find by a preponderance of the evidence that the liens against the property were good and valid. The statute says that had they not done so, they could have reduced the amount of impositions against the property. And so it was not a presumption. What we're arguing is that it was the finding on that point, the factual finding on that point. And that factual finding or that factual issue is the same issue that's at issue in this case. And so that's why we are saying that that finding is controlling here. I'm out of time, Your Honor, so I will. What's your best case for this point, that you're stopped through whatever mechanism, whether you want to call it judicial estoppel, collateral estoppel, or some other form of estoppel? What's your best case for the idea that if you choose not to challenge the tax valuation, you're stuck with it or everybody's stuck with it when it comes to a later seizure of the property, eminent domain, land bank, whatever it is? What's the best case on that? Just one. We'll read it and figure out if you're right. You don't have to tell us what it says. Just tell us the case and I'll read it and see if you're right. So, Your Honor, I understand that it wasn't on this particular issue, but the Horne case where the United States Supreme Court said if the government's already calculated the value. Excuse me? The California takings case, is that what I'm thinking? I believe so. I believe it's the California one. That where the Supreme Court said if the government's already determined the value of the property, they should be. That's not a real property case, I don't think, is it? It's not a real property case, no. How would it have to do with tax valuations and fair market value at the time of the taking? Because, Your Honor, it's the principle that if the government has asserted a value to take property, it should be held to that value when it has to remedy that taking in the future. So, under that case, with that value that you said it must be held to, would there have to have been a judicial finding by some administrative body or otherwise about valuation? In the Horne case, I don't believe that. There may have been a judicial finding, but in this case, there certainly was. Even to the extent in Horne that there wasn't, that principle is even stronger here because of collateral and judicial estoppel, because there was a judicial finding on that point. Thank you.  Morning. Morning. May it please the Court, excuse me, Stephen Funk of Retzland-Andrus on behalf of Cuyahoga County. The issue in this case is whether the trial court abused its discretion in denying class certification. That's the issue that the court has jurisdiction over. And we agree with some of the sentiments here that the trial court in this case simply followed longstanding precedent that says that tax valuations are not admissible for purposes of proving the merits of a takings claim. And in this case, the class definition was based upon the premise that a punitive class member would have had value that exceeded the amount of taxes owed. So in order to prove class membership, they would have to show the fair market value of the property as of the date of the transfer. And with respect to whether they could rely on the auditor's valuation, the case law is pretty clear about that. The auditor's valuation is for a different purpose. It's for a different time and it's based upon a different standard. And that's why... So let's assume hypothetically that he's correct, that the case he cited to us is correct and that you can use this valuation from the government and that controls in the case. Under the facts of this case, does it otherwise meet all of the requirements for Rule 23 certification if, I mean hypothetically, if he's correct? Is there another problem? I would say, Your Honor, no. And that's because even if the valuation were admissible, it would have been as of January 1st, 2018. So when a takings claim, you have to look at what was the value as of the day of the transfer. So in that situation, either side could present evidence as to whether the condition of the property changed or the market conditions changed. That's why, as Judge Sutton, I think, articulated, it's a presumption because the facts can change. Value can change on a daily basis. In fact, the plaintiff's own expert admitted to that fact. So it would not be controlling. You would still have to make individualized factual determinations as to the value on an individual date. And this case, actually, the plaintiff's own takings claim demonstrates this point very clearly. In this case, they hired an independent appraisal expert to substantiate their takings claim. And that appraisal expert came up with a value as of the date of the transfer that was substantially lower than the auditor's most recent value. And he even acknowledged that value can change over time and that his determination, when he was making his determination, he didn't rely on the auditor's valuation at all. He made his own independent determination. Defense expert came in with a valuation that was actually lower than the amount of taxes were owed. And so we had actually moved for summary judgment on that point. But the point is that any trial of that claim, that individual claim, is going to be a very highly fact-based inquiry into what the value of the property was as the date of the transfer and whether it exceeded the amount of taxes owed.  We're going to have factual testimony as to what the condition of the property was on the date of the transfer. In this particular case, the property was highly vandalized. And that was not known until after the property was foreclosed and transferred. How does the county determine what goes on the abandoned properties list? How does that happen?  Your Honor, I'm not exactly sure exactly how that works. But essentially, properties are determined to be taxed delinquent. They go on a certified tax delinquent list. Is there some number of years it has to be on that list? I think it's at least one year. And sometimes it's on there for much longer before you even get to the point of foreclosure. But I think that it's somehow identified as being vacant. And then they confirm it with an affidavit before they file. So I'm not exactly sure how they find out that it's vacant. But then when it's filed, it's... There's no judgment? It's just a bunch of objective rules? No. And it hit these milestones? Well, I think that... It goes to this abandoned property list? I mean, I think that ultimately you look at what the delinquency is as to whether or not you're going to pursue it. But the factual determination whether it's vacant or not, that's submitted by affidavit. Then the property owner is served. And at that point, they can come in to the tax hearing and say, this is not vacant. If it's not vacant, then it goes... It can't be transferred. It has to go to the court. So it's really up to the... So most of these... I mean, all these properties are abandoned. But most of the property owners then don't come in to the tax foreclosure proceedings. They don't... They've abandoned them. So they haven't paid the taxes. They've abandoned the properties. And so they're essentially conceding that they are not going to contest the foreclosure. And there's no bank involved? Like there's no mortgage where they come in? If they're noted... Everybody that has interest in the property would be served. So at that point in time, if they wanted to come in, they could have whatever rights that they wanted to assert. Most of them are not coming in to these proceedings because these properties have no value that is worth protecting, essentially. Do you have any idea... Maybe it's in the record. Like approximately how many class members would there be if a class were to be certified? I believe that defendants, the plaintiffs, as part of their discovery, obtained sort of a list of... And I think it's around 400. And really we're looking at... But their list was actually overly broad because it would be subject to the statute of limitations. So any class would be smaller than that because it would be within the statute of limitations. We're contesting in virtually every part of the class cert including A, B... I'm sorry, 23A, 2, 3, and 4. We haven't challenged the numerosity. But we are challenging commonality. I guess I was just wondering how burdensome these little mini-trials would be to determine value of a property. I mean, maybe they could be fairly brief and if it's a manageable number of class members, maybe that's not that difficult a thing to do. It could be pretty time-consuming. But I think it would be, Your Honor. This case actually presents a very classic example of the kind of trial you'd be looking at. I mean, we've had factual discovery. I've deposed the plaintiff. And I had to determine what the condition of the property was and when was it vandalized. And I had to get records from police reports that determined when it was vandalized, how long it was vacant. Did he do any improvements over the course of those time period? What did he do to maintain the property? Has he ever used it? So I had a lot of factual inquiry. In fact, we deposed him twice because he ultimately failed to produce a number of documents that we had requested. And then when they ultimately presented them after we had moved for summary judgment, I had to go in and take their deposition again. I hired an expert. They've hired an expert. Those people have done highly intense 100-page expert reports in which they've looked at the market conditions of the property at that time, what neighborhood it was in, what was surrounding it. You know, valuation is a highly fact-based determination. It depends on the physical condition, market condition, the timing of it. So that's why this, you know, that's why eminent domain taking claims like this, I mean, not like this, but I'm talking about where value is at issue, are just not susceptible to class actions. I mean, it's important to note that this is different than the, there's a series of cases out of Michigan involving surplus proceeds. And that's where there's actually an argument, you know, there's an actual defined amount of money that the government received. And so that's different. Their whole claim is based upon value. And if you're going to make your claim based upon value, then you've got to prove the value as of the date of the transfer. And that's why it's highly individual. What's wrong with a rule, you know, you have an efficiency rule which is we're just, it's just a presumption, and we only do it every six years. And if you don't like it, challenge it. Right? That's your theory and approach. And I guess this is what most counties do. Why not put yourselves in the taxpayer's shoes and have the same obligation on the taking side? That, hey, it's just a presumption, and if the county doesn't like it, the county can be the one that submits facts and challenges it. And why does that show, why does that actually show there's a commonality superiority predominance problem? Because it's your, you would be the one that did it or didn't do it the way the taxpayer is the one that takes on this burden or not. Why isn't it just kind of fair play to flip it around? You did extract money from people based on that valuation, right? I mean, that's the thing that's powerful on their side. So to answer your question, the principle behind why tax valuations are not admissible is because they're for tax purposes only. So, for example, if I go into the Board of Revision to challenge the valuation, that's for tax purposes only. So I'm not able to then use that valuation that I proved in the Board of Revision in my takings claim or in my other claims I have regarding value. I would just substitute the word money for tax. They're for money purposes only, i.e., how much you're going to get. But this is for tax purposes only. So in other words, it's just for purposes of determining how much to calculate for taxes. And part of what they look at there is it's a mass appraisal because they're looking at relative value. They're looking at making sure equitable. That's why it would be a presumption in the other direction. And you could come forward. You wouldn't be barred and you wouldn't be stopped from saying, well, that was then, this is now. A lot's happened. It's worth a lot less. Therefore, don't make us pay the equity to them. But it's two different purposes. So in a takings claim, the burden would be on the plaintiffs to prove the value. And so in normal, like, eminent domain proceedings, for example, the auditor's value is not admissible because it creates an unfair presumption. I'm telling you, there's no estoppel. And it's just a presumption. Just as it's only a presumption when you tax, it's only a presumption at the takings. You're free to come in, hire somebody and say the way the taxpayer has to at the front end and say, this is ridiculous. It's been abandoned, vandalized. No one could possibly buy this for more than $3. But the problem with that, Your Honor, is that it's an unfair presumption because it's basically designed to switch. Well, this is what I'm liking about it. I'm warming up to this idea because I'm realizing it allows you to stand in the taxpayer's shoes and see how they feel about your tax approach. Let me explain why it's an unfair presumption. Because, and actually we cited a case in our brief that explains this, an Ohio case that explains this. So essentially what happens then is you've got a tax appraisal that was done for tax purposes only as of January 1st, 2018. Now, the plaintiffs want to say, I'm going to presume that that's the value as of July 19th, July 15th, 2019. But the problem is that that's not an accurate or fair presumption because even their own appraisal determined that it was substantially lower. So what you then do is I don't need to present my burden. I'll just put the burden on the defendant to knock down the presumption. When the plaintiff in the 1983 action bears the burden with respect to all issues, and that includes whether they're a member of the class. So all that does is it shifts the burden to the defense to try to present evidence. And then it also creates an unfair one. And this is why it's not admissible in eminent domain cases. Because if I have a jury and I'm hearing two competing experts as to what the value is, but then I hear that the county came up with an independent valuation back in 2018 that was independent of this takings claim, the jury is going to say, well, that seems like that's the more accurate value. And the courts have said, no, no, that's for tax purposes only. For eminent domain, you need to present individualized appraisal evidence as of the date of the taking. And we don't want to have the jury hearing evidence of something that is not for the purpose taken. You know, in this situation, the tax value is just for tax purposes only. That's why, you know, for purposes of a takings claim, that's not the determination that was made. The board revision did not have jurisdiction to decide a takings claim. They, in fact, did not make any factual findings about the value of the property. But they certainly were not determining the value of the property as of the date of the transfer. So when you say they didn't make any findings, are you just saying that they adopted whatever the tax evaluation was? Did they not even do that? Just go through a perfunctory procedure? Well, the order is in the record, and it's about a five-page order, but basically they're making sure that the statutory requirements have been met. So with respect to the statute, they're finding that, yes, taxes are owed, two, that it's vacant property, and then three, that the proper election has occurred by electing subdivision to provide for a transfer. And with respect to that statute, 323.78, the value is actually irrelevant because the statute says it may be transferred regardless of whether the fair market value exceeds it. I mean, you can hash a lot of this out, can't you, if you engage as an owner or taxpayer in the process along the way. I mean, there are ways to participate in the hearing before the board. You can object. You can have the matter moved to state court. There's a redemption period. If you pay the taxes, you know, other obligations, you can get the property back. So, you know, an owner can actively challenge a lot of these matters via the Ohio statutory process. I mean, there are just so many opportunities. Yeah, that's absolutely correct. And the other thing I would add to that is that they can enter into a payment plan. So, for example, that happens all the time where, you know, the county, you know, files a foreclosure proceeding and the person shows up and says, I'd like to keep my property and they get into a payment plan. So there's plenty of due process built into the system. And, you know, what's happened here is the reason why this statute was even created is because you have this problem with vacant abandoned lands in which basically nobody is showing up for the hearings. It's, you know, it's generally uncontested. You know, the value is such that nobody's willing to put in the money that needs to be done, like in this case, a vandalized property that's going to take hundreds of thousands of dollars to just get it into a condition that it could be used or resold. So that's why this General Assembly created this statute. But for purposes of the class cert, and I see my time is up, I think that the district court just simply followed elementary principles of class certification in finding that they did not meet the requirements for a P-3 class action, and that's certainly not an abuse of discretion. We ask the court to affirm. Thank you. I hear rebuttal. So I believe Judge Cole, during Appellee's argument, hit on a point that I want to talk about, and it dovetails well with something that Judge Sutton said. So Judge Cole mentioned that maybe given the class size here, the individualized determinations may not be so onerous so as to prevent class cert. And Judge Sutton mentioned about the use of a rebuttable presumption, you know, putting the county in the taxpayer's shoes. I think part of the issue that we had below was that the district court was focused on, are these valuations controlling and conclusive? And if they're not, it's definitely going to be individualized, and it definitely is going to be completely unable to be adjudicated on a class-wide basis. But in the briefing below, and as mentioned in our briefing before this court, there may be ways to mitigate some of the effect of the need to resolve some of these issues individually. And I think Judge Sutton hit on a good point that, you know, if the Arbor's valuations are deemed to be admissible, not conclusive, but just admissible, which, you know, there is case law out there that says that generally speaking, these valuations are not admissible for the purpose of proving value. There are exceptions to that, such as, you know, where the condemner and the party that came up with the valuation are one and the same. So if they're admissible for that purpose, that would be sufficient for plaintiffs and class members to meet their burden of proof to establish a prima facie case. At which point- But how does that solve- I still don't understand how that solves the- each piece of property is different. Because, Your Honor, if- It's still a presumption. I mean, best case scenario, it's still a presumption. It's- it would be- well, if it was admissible to prove that, it would be- that value would- yes, that would be presumed to be the value unless and until it's rebutted by the county with countervailing evidence. The reason that that would- In this very case, won't they do that every single time you claim there's equity? I mean, I can't imagine they wouldn't. It's an abandoned property. It's like value going down every day. I understand, you know, your point on that, Your Honor, but I think that the county is unlikely to challenge every single one of these things. I mean, there's, you know, several claims. I think we said about 40 percent are, like, less than $500 or $1,000, that it may not even be worth it for the county to go and challenge those. There's also the fact that, you know, for some of the high-value claims, there's a significant amount of risk that, you know, perhaps especially with the way the housing market's been going, that the valuation could have actually increased, and it would increase the county's liability. And so, you know, these are- and there's case law from the circuit that mentions, you know, the existence of a potential individualized defense doesn't necessarily, you know, preclude class certification. And I'm not saying that this is not a defense that can't be raised. What I'm saying is that whether or not that's going to, you know, predominate and swamp the other common issues in this case, you know, that was something that the trial court really never addressed because it was just sort of this dichotomy between either everyone could be approved at once or it's going to definitely be individualized. And, you know, there were things raised in the briefing below, you know, of ways that those concerns could be mitigated, but they weren't- but the district court didn't really go into them. And so for that reason, you know, we think that the appropriate remedy, you know, would be a reverse and remand for the district court to consider, as Judge Cole said, you know, how many people are actually in the class? Is that actually going- are there going to be enough- are there going to be a significant number of individualized challenges to defeat class certification? Can other methods be used, such as mass appraisal or a special master or things like that, can those methods be used to, you know, mitigate some of the difficulties of class-wide adjudication here? And, you know, finally, the one thing I want to mention is that, you know, even if the class were to lose as a whole, fail in unison, that is actually another reason why, you know, class cert could be appropriate. And so, you know, the fact that if the county is right that there is no takings claim here, we would never have to get to those issues. So for that reason, for those reasons, Your Honor, we would ask that the court reverse and remand for further consideration. All right. Thanks to both of you for your helpful briefs and oral arguments. It's an interesting case, so thank you for your help. The case will be submitted, and the clerk may call the next case.